**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **LUIS MALDONADO GUERRERO,** | § | |
| **TDCJ No. 02483373,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **A-25-CV-00896-DAE** |
| | § | |
| **ERIC GUERRERO, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## ORDER

Before the Court are Petitioner Luis Maldonado Guerrero's counseled Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (ECF No. 1), Respondent Eric Guerrero's Response (ECF No. 9), and Petitioner's Reply (ECF No. 12). Having reviewed the record and pleadings submitted by both parties, the Court denies Petitioner's federal habeas corpus petition under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d).

## I. Background

In June 2019, Petitioner was charged by indictment with continuous sexual abuse of a young child under the age of 14. (ECF No. 10-31 at 6-7.) On November 6, 2023, a jury convicted Petitioner of the charge (ECF No. 10-1 at 101) and on December 8, 2023, the trial court sentenced Petitioner to 45 years imprisonment (ECF No. 10-31 at 8-10). *State v. Guerrero*, No. 18,693 (21st Dist. Ct., Washington County, Tex. Dec. 8, 2023). That same day, Petitioner filed a notice of appeal. (ECF No. 10-1 at 110-11.) On May 8, 2024, Petitioner, through counsel, moved to dismiss the appeal, stating there was no issue preserved for appellate review that would arguably result in

the reversal of his conviction or sentence. (ECF No. 10-30.) On May 21, 2024, the state court of appeals dismissed Petitioner's appeal. *Guerrero v. Texas*, No. 01-24-00004-CR (Tex. App.—Houston [1st Dist.] 2024, no pet.). (ECF No. 10-13.)

On July 31, 2024, Petitioner filed a counseled state habeas corpus application, listing the following grounds of relief:

1. Trial counsel had an actual conflict of interest.
2. Trial counsel provided ineffective assistance at the guilt-innocence stage.
3. The State failed to correct the complainant's false testimony.
4. Cumulative prejudice required a new trial.

(ECF No. 10-31 at 12-30.) The state habeas court, which was the same as the trial court, held a hearing on October 11, 2024. (ECF No. 10-34.) On December 30, 2024, the state habeas court issued Findings of Facts and Conclusions of Law that recommended denying Petitioner's habeas corpus application. (ECF No. 10-32 at 262-75.) On February 26, 2025, the Texas Court of Criminal Appeals (TCCA) denied Petitioner's state habeas application without written order based on the findings of the trial court and on the TCCA's independent review of the record. *Ex parte Guerrero*, No. WR-96,339-01 (Tex. Crim. App. Feb. 26, 2025). (ECF No. 10-35.)

On June 10, 2025, Petitioner filed the instant federal habeas corpus petition raising the following ground for relief:

1. The state court decision that the prosecutor's failure to correct the Complainant's false testimony did not deny Petitioner due process of law was contrary to or involved an unreasonable application of Supreme Court precedent.

(ECF No. 1.) In his answer, Respondent Guerrero argues Petitioner's federal habeas petition should be denied because he fails to show the state court's rejection of the claim was objectively unreasonable. (ECF No. 9.) Petitioner has filed a reply to Respondent's answer. (ECF No. 12.)

## **II. Standard of Review**

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. A petitioner must show that the state court's decision was objectively unreasonable, not just incorrect, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). As a result, to obtain federal habeas relief on a claim

previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. "'If this standard is difficult to meet—and it is—that is because it was meant to be.'" *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

## **III. Analysis**

1. Factual Background

The following factual background is summarized from the trial transcript, arguments and exhibits admitted at Petitioner's state habeas hearing, Petitioner's statement of facts from his federal habeas petition, and the state habeas court's findings of facts and conclusions of law.

The complainant, J.H., was born in 2002 and was 21 years old during Petitioner's trial. Petitioner is not her biological father. Petitioner's wife, Abigail Guerrero, testified that she, Petitioner, and J.H. began to shower together when J.H. was in first or second grade after they found a sexually explicit note in J.H.'s school backpack, in an effort to teach J.H. about anatomy. This ended when J.H. entered puberty and she did not want to shower with them anymore.

At trial, J.H. testified that, when she was six or seven years old, Petitioner told her to sleep with him to keep the bed warm while Abigail was out of town. During the night, J.H. awoke to discover that her clothes had been removed and Petitioner's penis was in her vagina. J.H. testified that his penis penetrated her vagina and mouth on other occasions at their home when she was under the age of 14 and that he would enter her bedroom at night to examine her to determine whether she recently had sex. She testified she was 15 years old the last time they had sexual intercourse.

In January 2017, when J.H. was 15 years old, Petitioner learned she had snuck out of the house at night to have sex with a 20-year-old named Gustavo Salas. Petitioner hit J.H., made her file a police report against Salas against her will, and took her to the hospital for a rape kit. J.H. was upset, angry, and embarrassed about the incident. In 2018, a boy snuck into J.H.'s room to have sex; J.H.'s cousin walked in on them and told Petitioner about it. The next day, when J.H. came home from school, Petitioner asked her the name of the boy who came over the night before and then hit her; when J.H. fell to the floor, Petitioner continued to hit her. J.H.'s great-grandmother—who had dropped her off from school—heard J.H. scream, entered the house and told Petitioner to calm down.

In June of 2018, J.H. visited her biological father, Ray Vargas, and told him about Petitioner hitting her. J.H. then moved in with Vargas. At trial, she testified that she told Vargas about Petitioner's sexual abuse in October 2018 and then told her mother, Abigail, about the sexual abuse in November 2018. On January 1, 2019, J.H.'s great-grandmother took her to the Washington County Sheriff's Office to report the sexual abuse. Petitioner was indicted for continuous sexual abuse of a young child on June 19, 2019. On June 27, 2021, Gustavo Salas was indicted for sexual assault of a child based on the 2017 incident. Both Salas and Petitioner retained Scott Ballard as their defense attorney.

On January 7, 2022, the Washington County District Attorney's Victim Assistance Coordinator, Amanda Horak, wrote in a victim contact log that J.H. had asked her if there was any way to drop the charges against Salas. J.H. stated she thought the charges were only based on their ages and "this was all consensual, and was only reported because of [Petitioner]." Horak noted that she explained to J.H. that it was up to Lauren Haevischer, the Assistant District Attorney in charge of Salas and Petitioner's cases, and that "we generally do not drop these cases because we

represent the state of Texas." (ECF No. 10-31 at 154.) On March 9, 2022, Horak sent a text message to J.H. stating that both Petitioner and Salas had court the next day. Horak also stated, "I have reminded Lauren you want to talk to her about our case with Gustavo and she will try to get me some dates soon, we have been very very busy and its been hard to schedule anything except what we need for trials. But I haven't forgotten!" (*Id.* at 155.) On June 14, 2022, Horak again texted J.H. saying, "Gustavo has court on Thursday. I don't have any updates on the case. I've reminded Lauren that you want to speak with her but she's let me know it will be [A]ugust at the earliest. I'm sorry. Please let me know if you have any questions." J.H. responded, "I don't think I have any questions, thank you ma'am." (*Id.* at 157.) On July 25, 2022, Ms. Horak resigned from her position in Washington County District Attorney's office. (*Id.* at 158.)

On September 15, 2022, Ms. Haevischer filed a motion to dismiss in the Salas case, giving as a reason "[t]he complaining witness has requested dismissal, and/or restitution has been paid." (ECF No. 10-32 at 304.) The trial court granted the motion. (*Id.* at 310.) The certificate of service for both the motion and the order granting the motion show they were emailed to Scott Ballard on September 15, 2022. (*Id.* at 305, 311.) On October 21, 2022, Ms. Haevischer resigned from the Washington County District Attorney's office. (ECF No. 10-31 at 159.)

On November 1, 2023, on the third day of Petitioner's criminal trial, his trial counsel, Scott Ballard, questioned J.H. regarding the Gustavo Salas case:

> Q: And in the Gustavo situation, did you follow up with what happened in the investigation or the report at all?
> A. No, sir.
> Q. Did anyone ever contact you regarding that?
> A. No, sir.

(ECF No. 10-6 at 75.)

On June 18, 2024, while preparing Petitioner's state habeas application, Petitioner's habeas counsel emailed the Washington County District Attorney, Julie Renken, regarding the dismissed Salas indictment. In the email, counsel speculated, "[i]t seems to me that the only legitimate basis to dismiss was if [J.H.] recanted her accusation or refused to testify against [Petitioner] unless the State dismissed Salas's indictment. I cannot imagine any other reason." On June 19, 2024, Ms. Renken—who tried Petitioner's criminal case—responded as follows:

> [J.H.] never recanted what happened with Gustavo Salas. I also do not think that she refused to testify against him. She maintained the entire time that it was consensual and thus a "statutory rape". I know Ms. Haevischer talked to me about the dismissal before she did it but my memory is not 100 percent on the why. I spoke to Lauren and together what we remember is because once she became an adult J.H. did not want to go forward on that because it was consensual. She testified to all of that during [Petitioner's] trial also from what I remembered as Mr. Ballard brought all of this up during that trial.

(ECF No. 10-31 at 88.)

In an affidavit submitted to the state habeas court, J.H. attested that she never heard from Ms. Horak after June of 2022 and was never informed as to the status of the Gustavo Salas case by a new Victim Assistance Coordinator, an attorney in the office, or anyone else. She further attests that, on August 29, 2024, Ms. Renken called and asked her if she knew the disposition of the Gustavo Salas case and J.H. said she did not. Ms. Renken told J.H. the case had been dismissed on September 15, 2022, based on her request to Ms. Horak. J.H. attests this was the first time she had this knowledge. (*Id.* at 152-53.)

During the state habeas hearing, Petitioner's counsel questioned Ms. Haevischer about the dismissal of the Gustavo Salas case. She repeatedly stated she did not remember any conversations with Ms. Horak regarding J.H.'s request to dismiss the case, that she had no recollection of speaking to either J.H. or Ms. Horak prior to filing the motion to dismiss, and did not remember the factual basis for why she dismissed the case. When counsel asked the State to produce their

Gustavo Salas file, Ms. Renken stated the record had been destroyed per the office's archive retention policy. When Petitioner's counsel again asked her how she could state in a government document that J.H. requested dismissal when she had no memory of speaking to J.H. or Ms. Horak, Ms. Haevischer requested to speak to her two attorneys present at the hearing, but the court denied the request. Afterward, Ms. Haevischer continued to testify that she could not remember the factual basis for why she moved to dismiss the case against Gustavo Salas. She further testified that she did not remember notifying J.H. about the dismissal, despite having a statutory duty to keep a complainant informed regarding the status of their case. (ECF No. 10-34 at 8-41.)

The state habeas court issued the following findings of fact and conclusions of law:

> 11. September 15th, 2022 the indictment against Gustavo Enrique Salas was dismissed. (Defense Exhibit 1, & "Order on Motion to Dismiss" Cause No. 19,343, 21st District Court, Washington County, Texas.)
>
> 12. The Motion to Dismiss[] was requested by Assistant District Attorney Lauren Haevischer after discussing the dismissal with District Attorney Julie Renken. (Defense Exhibit 1, Writ Transcript, page 25, lines 2-26).
>
> 13.Lauren Haevischer's testimony as to the reason for dismissal is very disappointing to the Court and lacks veracity.
>
> 14. Ms. Renken's cross-examination of Ms. Haevischer validates that lack of veracity.
>
> 15. Ms. Reken is not 100% on why it was dismissed. (Applicant Ex. 5).
>
> 16. The State generally does not drop these cases. (State Ex. 5).
>
> 17. Based upon the Court's recollection of cases similar to the Gustavo Enrique Salas indi[ct]ment, the [C]ourt was deceived by the State in dismissing the Gustav[o] Enrique Salas indictment.
>
> 18. The dismissal of the Salas case by this Court was improper.
>
> 19. Concerning the [Gustavo Salas] situation, [J.H.] was asked by trial counsel: (See R.R. Vol. 4, page 75, lines 20-25).
>
> > "Did you follow up with what happened in the investigation or the report at all?"

> [J.H.] answered, ”No, sir”.
> “Did anyone ever contact you regarding that?”
> [J.H.] answered, “No, sir.”
>
> 20. [J.H.]’s answer to the second question is false:
>
> [J.H.] was contacted by Amanda Horak of the District Attorney’s Office concerning Gustavo Salas. (States Exhibits 5 & 6).
>
> ….
>
> 27. Based on the Court’s recollection of the trial, the Court gives no weight to [J.H]’s affidavit of not being notified of [the] Salas dismissal.
>
> 28. The State had a duty to inform [J.H.] of the dismissal.
>
> 29. The State failed to perform that duty.
>
> ….
>
> 73. The Court finds the State’s Attorney failed to correct the complainant’s false answer.

(ECF No. 1 at 19-20, 24.) The state habeas court then concluded that “[t]he false statement as to being contacted was not material.” (*Id.* at 25.)

2. *Napue* claim

Petitioner argues his right to due process was violated when the prosecutor failed to correct J.H.’s false testimony regarding Gustavo Salas’s dismissed case. The state habeas court agreed that the State had a duty to correct J.H.’s false testimony and that the State did not correct the false testimony but concluded that the testimony was not material.

In *Napue v. Illinois*, 360 U.S. 264, 269 (1959), the Supreme Court held that a criminal defendant is denied due process when the State knowingly uses false or perjured testimony or allows false testimony to go uncorrected at trial. A petitioner seeking habeas relief based on this type of claim must show (1) the testimony is false, (2) the prosecution knew that the testimony was false, and (3) the testimony was material. *Reed v. Quarterman*, 504 F.3d 465, 473 (5th Cir.

2007); *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001). False testimony is only material if there was a reasonable likelihood that it affected the jury's verdict. *Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000).

Petitioner argues the state habeas court's conclusion that the false testimony was not material is an unreasonable application of Supreme Court precedent. Specifically, Petitioner argues that Supreme Court precedent holds that a habeas petitioner is entitled to relief on a false-testimony claim unless the prosecution proves beyond a reasonable doubt that the false testimony did not contribute to the conviction. Petitioner argues that the state habeas court concluded that J.H. testified falsely and the State did not correct the testimony. Petitioner argues the state habeas court erred in concluding the testimony was not material because it erroneously placed the burden on Petitioner to prove by a preponderance of the evidence that J.H.'s testimony contributed to his conviction rather than requiring the State to prove beyond a reasonable doubt that it did not.

Petitioner admits that the state habeas court did not articulate the standard of review it used for determining materiality but points to the state habeas court's general statement that a state habeas applicant "must prove by a preponderance of the evidence that the error contributed to his conviction or punishment." (ECF No. 1 at 25.) Petitioner further argues that, "[b]ecause the state court used an erroneous standard to determine materiality, this Court must engage in *de novo* review." (ECF No. 1-1 at 28.) Finally, Petitioner argues the state habeas court's decision is also not entitled to deference because it did not specifically address in its findings of fact whether J.H.'s response of "no, sir" to the question, "And in the Gustavo situation, did you follow up with what happened in the investigation or the report at all?" was false.

Respondent argues Petitioner has failed to show the state court's rejection of his claim was objectively unreasonable. Respondent argues that, prior to *Glossip v. Oklahoma*, 604 U.S. 226

(2025), no clearly established law applied the "reasonable doubt" standard to a § 2254 *Napue* claim, and *Glossip* was decided after Petitioner's state habeas application. Further, Respondent argues the jury heard that J.H. was upset, angry, and embarrassed that Petitioner made her file a police report against Gustavo Salas; J.H.'s mother testified that she believed J.H. accused Petitioner of sexual abuse because of her resentment of the Salas incident; and Petitioner's counsel reinforced this argument during closing. Finally, Respondent argues that, under Fifth Circuit precedent, false testimony elicited by defense counsel on cross-examination is not material. (ECF No. 9.)

In his reply, Petitioner argues Supreme Court precedent regarding the "reasonable doubt" standard was clearly established at the time of Petitioner's trial and state habeas application. Petitioner also argues that Respondent's argument that perjured testimony is not material if the defense elicits the testimony on cross-examination is not applicable to Petitioner's case. (ECF No. 12.)

Under the AEDPA, a federal court cannot grant a state petitioner habeas relief unless the petitioner shows the adjudication of his state claims resulted in a decision that involved either an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown*, 544 U.S. at 141. Here, Petitioner argues the state habeas court's decision that J.H.'s perjured testimony was not material resulted in an unreasonable application of clearly established federal law.

The Court is not persuaded. Petitioner admits that the state habeas court did not state the standard of review it relied on for analyzing his false-testimony claim and then speculates the state habeas court adjudicated the claim using a preponderance-of-evidence standard, rather than the "reasonable doubt" standard articulated in *Glossip* and *United States v. Bagley*, 473 U.S. 667, 679-

80 & n.9 (1985). However, in *Uvuansi v. Guerrero*, 126 F.4th 382, 390 (5th Cir. 2025), the Fifth Circuit held that Supreme Court precedent was "ambiguous" as to whether "materiality is an element of a *Napue* violation, which [the petitioner] would presumably have to prove, or a means of avoiding reversal, which [the petitioner] might not have to prove." In *Uvukansi*, the Fifth Circuit observed that the "reasonable likelihood" standard articulated in *Napue* was a lower standard than "preponderance of the evidence." *Id.* The Court further concluded that the state habeas court had not imposed a higher standard simply by referring to the preponderance-of-the-evidence standard habeas applicants bear in proving a constitutional violation. Petitioner's counsel should be aware of this case, considering he was the counsel of record for Mr. Uvukansi. As a result, the Court does not agree that reasonable doubt standard applies to Petitioner's claim or that the Court can infer that the state habeas court imposed a higher standard on Petitioner's claim simply by referencing the general standard of review for all state habeas applications.

Petitioner further argues that, since the state habeas court did not articulate the exact standard of review it used in evaluating his *Napue* claim, that therefore this Court must review the claim de novo. This is incorrect. The AEDPA's deferential review applies to claims adjudicated on the merits in state habeas proceedings. *Thomas v. Davis*, 968 F.3d 352, 354 (5th Cir. 2020) (citing *Johnson v. Williams*, 568 U.S. 289, 292 (2013)). A federal court will only conduct a de novo review if a claim was properly before the state habeas court but not adjudicated on the merits. *Id.* (citing *Nobles v. Johnson*, 127 F.3d 409, 416 (5th Cir. 1997)). Here, the state habeas court adjudicated Petitioner's claim on the merits and thus his argument that the Court should review the claim de novo fails.[1]

[1] Petitioner also argues the state court's adjudication is not entitled to deference because it did not address whether J.H.'s answer, "No, Sir" to the question, "And in the Gustavo situation, did you follow up with what happened in the investigation or the report at all?" was false. However, the state habeas court included both questions and answers in its findings of fact and then stated J.H.'s answer to the second question was false. Although the state court did not

Under the AEDPA, Petitioner must show that the state court's application of federal law to his claim was objectively unreasonable, i.e. that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Petitioner does not carry this burden. The state habeas court, which was also the trial court, concluded that J.H. was not truthful when she testified that no one had ever contacted her about the Gustavo Salas situation, that the prosecutor failed to correct J.H.'s testimony, but that her false testimony was not material, i.e. it was not reasonably likely that it affected the jury's verdict. Petitioner argues that, if the prosecutor had corrected J.H.'s testimony, this would have "destroyed the credibility of the key prosecution witness and, in turn, supported the defense theory of revenge." (ECF No. 1-1 at 18.) But this is not the conclusion the state habeas court came to, and because it was identical to the trial court, its determination of factual issues enjoys an "especially strong" presumption of correctness. *Mays v. Stephens*, 757 F.3d 211, 214 (5th Cir. 2014). Further, not only did Petitioner's trial counsel argue his revenge theory through Petitioner's and Abigail Guerrero's testimony, counsel also solicited testimony from J.H. that she felt angry, upset, and embarrassed after Petitioner made her report the Salas incident to the police. (ECF No. 10-31 at 149-50.)

Based on the arguments before the Court, fairminded jurists could disagree on the correctness of the state habeas court's decision. Accordingly, the Court concludes it was not unreasonable for the state habeas court to conclude J.H.'s false testimony was not material under *Napue*. This claim is denied.

---

make an explicit decision regarding J.H.'s answer to the first question, the context makes it clear the state court did not conclude the answer was false. The AEDPA's presumption of correctness still applies "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

**IV. Certificate of Appealability**

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the Court will not issue a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED**; and

It is further **ORDERED** that a certificate of appealability shall not issue in this case.

SIGNED this 15th day of October, 2026.

DAVID A. EZRA
SENIOR UNITED STATES DISTRICT JUDGE